UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KELLY KNIGHT, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>PRUDENTIAL INSURANCE )<br>COMPANY OF AMERICA, et al., )<br>)<br>Defendants ) | 2:18-cv-00407-JAW |

**ORDER ON MOTION FOR DISCOVERY
AND MOTION TO SUPPLEMENT RECORD**

In this action, Plaintiff seeks to recover benefits from her employer's disability insurance plan under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq.

The matter is before the Court on Plaintiff's request to modify the administrative record and to conduct discovery. (Motion, ECF No. 13.) Following a review of the pleadings and after consideration of the parties' arguments, I grant in part the motion.

**BACKGROUND**[1]

Plaintiff served as a finance manager for Kaplan University for more than eight years. Plaintiff suffers from a degenerative spinal condition for which she has undergone multiple surgeries, including a cervical spinal fusion and multiple lumbar laminectomies, and suffers from vision difficulties, Cushing's syndrome, Sjogren's syndrome, and adrenal

---

[1] These facts are taken from Plaintiff's complaint and the representations in the parties' memoranda that were supported with record citations and uncontroverted.

insufficiency. Plaintiff maintains that as the result of her medical conditions, she experiences extreme exhaustion and fatigue.

During Plaintiff's employment at Kaplan University, she participated in a disability insurance plan. The plan is self-funded by its sponsor, Defendant Graham Holdings Company (hereinafter "the Sponsor"). The Sponsor entered into an administrative services agreement with Defendant Prudential (hereinafter "Defendant"). Pursuant to the agreement, Defendant administers claims for disability benefits under the plan. Although Defendant decides whether a particular disability claim must be paid, the disability benefits are paid out of a trust that is funded by the Sponsor.

On July 6, 2015, Plaintiff stopped working and filed a claim for short- and long-term disability benefits. Defendant approved Plaintiff's claim for short-term disability and paid benefits for the short-term disability period, through September 30, 2017. On October 2, 2017, Defendant suspended payments, initially based on Plaintiff's failure to provide certain records, and then based on a determination that Plaintiff could perform her prior sedentary occupation. Regarding Plaintiff's fatigue, according to Plaintiff, Defendant maintains that "one would generally not expect to equate fatigue with sustained inability to work . . . ." (Plaintiff's Reply at 3, ECF No. 16.) Beginning on January 23, 2018, Plaintiff initiated several appeals regarding her claim for long-term benefits, but Defendant upheld its decision that she was not entitled to continued benefits. Plaintiff subsequently commenced this action.

## DISCUSSION

"Discovery is the exception, rather than the rule, in an appeal of a plan administrator's denial of ERISA benefits." *Ferry v. Prudential Ins. Co. of Am.*, No. CIV. 10-211-P-S, 2010 WL 4363381, at *1 (D. Me. Oct. 28, 2010), on reconsideration, No. 2:10-CV-211-GZS, 2011 WL 322000 (D. Me. Jan. 30, 2011). "The decision to which judicial review is addressed is the final ERISA administrative decision." *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 519 (1st Cir. 2005). "Because full-blown discovery would reconfigure that record and distort judicial review, courts have permitted only modest, specifically targeted discovery in such cases." *Denmark v. Liberty Life Assur. Co. of Bos.*, 566 F.3d 1, 10 (1st Cir. 2009). "[A]t least some very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator." *Liston v. Unum Corp. Officer Severance Plan*, 330 F.3d 19, 23 (1st Cir. 2003).

Plaintiff seeks leave to obtain the following discovery from Defendants: (1) internal guidelines, memoranda, rules, regulations, and policies concerning fatigue, Cushing's syndrome, Sjogren's syndrome, and adrenal insufficiency; (2) financial records concerning the income paid to the referral service and the two medical reviewers; and (3) documents addressing Defendant's alleged incentives, such as performance indicators and criteria for claims specialists.

**A.**    **Internal Guidelines, Memoranda, Policies**

"[C]laimants have a right to discover the contents of the administrative record if they are unsure whether all relevant information has been included." *Grady v. Hartford*

*Life & Acc. Ins. Co.*, No. CIV 08-339-P-H, 2009 WL 700875, at *6 (D. Me. Mar. 12, 2009).

"A document, record, or other information shall be considered 'relevant'" if it:

> (i) Was relied upon in making the benefit determination;
>
> (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;
>
> (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or
>
> (iv) In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

*Id.*; 29 C.F.R. § 2560.503-1(m)(8).

Discovery of this type does not threaten to expand the scope of judicial review beyond the bounds of the administrative record; it simply ensures that a court is able to review the entirety of the record. *See Glista v. Unum Life Ins. Co. of Am.*, 378 F.3d 113, 122–23 (1st Cir. 2004) ("*Liston* involved an effort to put into the record facts about other persons that were not before the administrator. Here, by contrast, what is sought to be admitted are the plan administrator's own documents interpreting the language of the Plan and providing the standard for evaluation of the facts presented"). Accordingly, courts often allow such discovery. *Id.*; *see also Grady*, 2009 WL 700875, at *6; *Adele E. v. Anthem Blue Cross & Blue Shield*, No. 2:15-CV-01-DBH, 2015 WL 4715753, at *2 (D. Me. Aug. 7, 2015); *Cannon v. UNUM Life Ins. Co. of Am.*, 219 F.R.D. 211, 214 (D. Me. 2004) ("Obviously, if [the administrator] has internal memoranda or policies that instruct

4

claim handlers how to apply the mental illness limitation, such materials are relevant to the question of whether [the administrator] acted arbitrarily and capriciously . . .").

In this case, in addition to the general proposition that a claimant should have access to the internal documents or policies the decision-maker consulted, Defendant's explanation for its decision to deny benefits also militates in favor of permitting discovery of the documents. Defendant's assertion that fatigue is generally non-disabling suggests the possibility of a policy or guideline that Defendant applied or referenced in this case. Accordingly, the Court will authorize Plaintiff to conduct discovery of internal guidelines, memoranda, rules, regulations, and policies concerning fatigue, Cushing's syndrome, Sjogren's syndrome, and adrenal insufficiency

**B.     Discovery on Medical Reviewers**

Discovery as to the financial incentives for medical reviewers and as to the relationship between medical reviewers and an insurer has been authorized in some cases in which a structural conflict exists. A structural conflict of interest exists when "the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). On judicial review, a structural "conflict should be weighed as a factor in determining whether there is an abuse of discretion." *Id.* at 115 (internal quotation marks omitted). Structural conflicts "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision" and "[i]t should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce

5

potential bias and to promote accuracy. . . ." *Id.* at 117. The claimant bears the burden of showing that the conflict influenced the administrator's decision-making. *Troiano v. Aetna Life Ins. Co.*, 844 F.3d 35, 45 (1st Cir. 2016).

The Supreme Court's opinion in *Glenn* "fairly can be read as contemplating some discovery on the issue of whether a structural conflict has morphed into an actual conflict." *Denmark*, 566 F.3d at 10.

> [P]lan administrators, aware of *Glenn*, can be expected as a matter of course to document the procedures used to prevent or mitigate the effect of structural conflicts. That information will be included in the administrative record and, thus, will be available to a reviewing court. Conflict-oriented discovery will be needed only to the extent that there are gaps in the administrative record. If, say, the plan administrator has failed to detail its procedures, discovery may be appropriate, in the district court's discretion. Otherwise, discovery normally will be limited to the clarification of ambiguities or to ensuring that the documented procedures have been followed in a particular instance.

*Id.* (footnote omitted).

Courts in this District, however, have at times allowed a claimant to pursue discovery exploring independent medical reviewers' financial reliance on ERISA plan administrators and their record of prior recommendations. *See e.g.*, *Grady*, 2009 WL 700875, at *4; *Achorn v. Prudential Ins. Co. of Am.*, No. CIV 1:08-CV-125-JAW, 2008 WL 4427159, at *6 (D. Me. Sept. 25, 2008). This District has also recognized that this type of discovery is generally not helpful in weighing the impact of conflicting incentives. *See Grosso v. Aetna Life Ins. Co.*, No. 1:12-CV-00327-GZS, 2013 WL 949494, at *2 (D. Me. Mar. 11, 2013) ("The discovery sought by plaintiff would not provide information likely to assist with a meaningful review of the record"); *Fortin v. Hartford Life & Accident Ins. Co.,* No. 1:11–cv–00230–DBH, 2011 U.S. Dist. Lexis 137118 (D.Me. Nov. 29, 2011)

(denying such discovery on the grounds that "it would add nothing to this record in terms of the decision made in this individual case" and that "this Court is not in a position to evaluate the merits of [multiple] years of denied claims under this disability plan"); *Adele E.*, 2015 WL 4715753, at *7 (same).

In this case, because Defendant is the claims administrator, and not the insurer, the structural conflict, which has been the basis for discovery into the possible bias of medical reviewers despite the general bar on discovery in ERISA appeals,[2] does not exist. Any benefits that would be paid would be drawn from the Sponsor's trust, not from Defendant's accounts. Defendant thus is not operating under a structural conflict of interest. *See Morales-Alejandro v. Med. Card Sys., Inc.*, 486 F.3d 693, 698 (1st Cir. 2007) ("[Defendant] administers claims under the Plan but does not insure the Plan. Successful claims are paid from the trust fund and not by [Defendant]. Therefore, [Plaintiff's . . . conflict of interest theory is not supported by the record . . ."). As a general rule, therefore, Plaintiff would not be entitled to the requested discovery.

Plaintiff, however, contends the relationship among Defendants, the service it employs to provide the medical reviews (Reliable Review Services), and the reviewers (Jamie Lewis, M.D. and Jilene Brathwaite, D.O., is "unclear." (Motion at 4.) She also maintains that because Dr. Lewis is known to review matters for the insurance industry, because "little is known" about Dr. Brathwaite, and because Reliable Review Services'

---

[2] *Achorn*, 2008 WL 4427159, at *6 (allowing discovery aimed at the incentives of medical reviewers "at least in cases where the fiduciary operates under a structural conflict of interest and has relied on the services and referrals of its own third-party agents to deny benefits"); *Ferry*, 2010 WL 4363381, at *1 ("The existence of such a conflict was the basis of the decision to allow specific limited discovery in *Achorn*").

choice of independent physicians is "seemingly suspect," the extent of the relationship of the reviewers with Defendants should be explored. (Motion at 6.)

Plaintiff's argument is unpersuasive. First, other than Plaintiff's reference to Dr. Lewis' involvement in other cases, Plaintiff has identified no evidence of record to support the assertion that the choice of physicians is suspect. In addition, in most cases, the relationship between the plan administrator and reviewing physicians is likely to be "unclear." If the Court were to adopt Plaintiff's reasoning and permit the requested discovery under the circumstances, the Court in essence would endorse a rule that would permit discovery in most every case, which result would be contrary to the general rule prohibiting discovery. In the Court's view, in the absence of a structural conflict, the general rule prohibiting discovery should control. The Court, therefore, will not authorize Plaintiff to conduct discovery to explore the relationship among Defendants, Reliable Review Services, and the medical reviewers.

**C.     Performance Incentives**

Plaintiff also seeks discovery concerning the professional or financial motives of Defendant's claims specialists. Plaintiff suggests that Defendant sets performance targets or otherwise tracks performance in a way that impedes the full and fair assessment on the specific facts of an individual's case. For example, Plaintiff questions whether Defendant requires the resolution of a certain number of claims within a specific time period. In support of her argument, Plaintiff cites a provision in the Administrative Services Agreement requiring Defendant to furnish the Sponsor with an estimate of the costs of proposed modifications or extensions to the Plan, which Plaintiff argues would be

impossible unless Defendant generally knew in advance how many claims would be approved or denied.

Several courts have permitted discovery of the financial or professional incentives that plan administrators provide to their employees. *Slusarski v. Life Ins. Co. of N. Am.*, 632 F. Supp. 2d 159, 170 (D.R.I. 2009) (allowing discovery regarding "the income and other incentives and disincentives . . . with respect to encouraging the denial of claims and appeals"); *Kinsler v. Lincoln Nat. Life Ins. Co.*, 660 F. Supp. 2d 830, 836 n.3 (M.D. Tenn. 2009) (same); *Davis v. Hartford Life & Accident Ins. Co.*, No. 3:14-CV-00507-TBR, 2015 WL 7571905, at *6 (W.D. Ky. Nov. 24, 2015) (granting discovery into "incentive, bonus or reward programs or systems formal or informal for any employees involved in any meaningful way in reviewing disability claims") (quoting *Gluc v. Prudential Life Ins. Co. of Am.*, 309 F.R.D. 406, 413 (W.D. Ky. 2015); *Almeida v. Hartford Life & Acc. Ins. Co.*, No. CIVA09CV01556ZLWKLM, 2010 WL 743520, at *3 (D. Colo. Mar. 2, 2010) ("Plaintiff is entitled to discovery on any financial incentives given to employees involved in denying her claim"). In a case in this district, however, the Court denied the request to conduct discovery of the incentives available to claims specialists:

> Nor does [Plaintiff's] presentation concerning bonus and incentive programs suggest to me how the standard of review might change depending on what she discovered. For example, if discovery revealed that claims handlers received incentives for "closing claims files," would that mean that [Plaintiff] would be entitled to benefits under the plan no matter what the record demonstrated on the merits[?] I presume not.

*Christie v. MBNA Grp. Long Term Disability Plan*, No. 1:08-cv-44-JAW, 2008 WL 4427192, at *3 (D. Me. Sept. 25, 2008) (footnote omitted).

Most of the cases in which courts have permitted the requested discovery have involved the structural conflict recognized in *Glenn*, which conflict is not present in this case. Without the structural conflict, the potential for incentives to influence the claims process is not as significant. Plaintiff's request for documents regarding general incentives and criteria for its claims specialists thus is not reasonable under the circumstances. Nevertheless, if Defendant had any incentives or goals for the denial of claims, Plaintiff should have access to the information. Plaintiff, therefore, will be permitted to request in discovery all documents that set forth, reflect, or relate to any policy or benchmarks that might exist as to Defendant's expectations regarding the number or percentage of claims to be denied.

## CONCLUSION

Based on the foregoing analysis, I grant in part Plaintiff's motion. (ECF No. 13). Plaintiff may request in discovery (1) internal guidelines, memoranda, rules, regulations, and policies concerning Defendant's assessment of fatigue, Cushing's syndrome, Sjogren's syndrome, and adrenal insufficiency; and (2) all documents that set forth, reflect, or relate to any policy or benchmarks that might exist as to Defendant's expectations regarding the number or percentage of claims to be denied. Plaintiff's motion is otherwise denied.

## NOTICE

Any objections to this Order shall be filed in accordance with Federal Rule of Civil Procedure 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 13th day of February, 2019.